Filed 11/20/20  P. v. Hughes CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MATTHEW HUGHES,<br><br>    Defendant and Appellant. | E073006<br><br>(Super.Ct.No. FSB1401940)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Michael A. Smith, Judge.  (Retired judge of the San Bernardino Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Charles R. Khoury, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel, Tami Hennick and Collette C. Cavalier, Deputy Attorneys General, for Plaintiff and Respondent.

1

## PROCEDURAL HISTORY

On April 23, 2014, a felony complaint charged defendant and appellant Matthew Hughes with unlawfully driving and taking a vehicle under Vehicle Code section 10851, subdivision (a) (section 10851) (count 1); receiving stolen property under Penal Code[1] section 496d, subdivision (a) (count 2); and possession of a controlled substance under Health and Safety Code section 11377, subdivision (a) (count 3). The complaint also alleged that defendant committed counts 1 and 2 for the benefit of, at the direction of, or in association with a criminal street gang under Penal Code section 186.22, subdivision (b)(1)(A). Furthermore, the complaint alleged that defendant had two prior convictions for first degree burglary under Penal Code section 459 and one prior conviction for attempted robbery under Penal Code sections 664 and 211, pursuant to Penal Code sections 667, subdivisions (b), through (i) and 1170.12.

On June 27, 2014, defendant pled guilty to count 1, and admitted the gang enhancement and two prior convictions. The trial court dismissed counts 2 and 3 per the People's motion. The court then sentenced defendant to a total term of 20 years in prison.

On February 25, 2015, on our own motion, we dismissed defendant's appeal "because the appeal [was] from a conviction based on a guilty plea and defendant only challenge[d] the validity of his plea, and the certificate of probable cause was denied August 18, 2014."

---

[1] All statutory references are to the Penal Code unless otherwise specified.

On November 26, 2014, while the appeal from defendant's conviction was still pending, defendant petitioned the trial court to have his felony conviction reduced to a misdemeanor pursuant to Proposition 47. On December 19, 2014, the trial court denied the petition. (*People v. Hughes* (June 15, 2016, E062841) [nonpub. opn.] at p. 2, hereinafter Prior Opinion.)[2]

On December 5, 2016, defendant filed a new petition for resentencing under Proposition 47 and on March 10, 2017, defendant filed a new petition for resentencing under section 1170.1. On April 19, 2019, following an evidentiary hearing, the trial court denied defendant's motion to reduce his conviction to a misdemeanor under section 1170.18 because defendant had failed to present evidence to demonstrate that the value of the vehicle in question was under $950.

On June 14, 2019, defendant filed a timely notice of appeal.

## DISCUSSION

A.     <u>THE TRIAL COURT PROPERLY DENIED DEFENDANT'S PROPOSITION 47 PETITION BECAUSE DEFENDANT FAILED TO MEET HIS BURDEN THAT THE VALUE OF THE VEHICLE WAS UNDER $950</u>

Defendant contends that the trial court's order denying his petition for resentencing should be reversed "because judicial estoppel prevented the People's use at the Proposition 47 hearing of a KBB [Kelly Blue Book] page and various car sales

---

[2] On November 5, 2019, we granted defendant's request to take judicial notice of the Prior Opinion.

3

publications which the People successfully objected to appellant using in his first appeal." (All caps. omitted.)

       1.    *LEGAL HISTORY*

" ' " ' "Judicial estopped precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position. [Citations.]  The doctrine's dual goals are to maintain the integrity of the judicial system and to protect parties from opponents' unfair strategies.  [Citation.] Application of the doctrine is 'discretionary." '  [Citation.]  The doctrine applies when '(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake.' " ' "  (*People v. Palmer* (2013) 58 Cal.4th 110, 116-117.)

       2.    *FACTUAL HISTORY*

After the denial of defendant's first petition for resentencing, he appealed.  In the appeal, defendant moved our court to judicially notice a page from a police report and a printout from KBB.com.  The People opposed defendant's motion.[3]  On June 16, 2016, we agreed with the People's position that defendant had failed to explain " 'how the Kelly Blue Book site is a "source of reasonably indisputable accuracy," ' " and " ' "not

---

      [3] Pursuant to the People's motion for judicial notice, we take judicial notice of defendant's motion for judicial notice and the People's opposition to the motion in the prior appeal, case No. E062841.

4

reasonably subject to dispute." ' " We then went on to state that even if we were to take judicial notice of the KBB printout, it would be improper for us to use the evidence to determine the value of the vehicle on appeal because it was defendant's burden to establish eligibility for relief in the trial court. We denied defendant's request for judicial notice and affirmed the trial court's order denying defendant's petition.

On December 5, 2016, defendant filed a new petition for resentencing under Proposition 47 in pro. per. Defendant attached a declaration from "appellate counsel in support of valuation of 1992 Honda" (all caps. omitted) dated February 8, 2016. This declaration was initially attached to defendant's request for judicial notice filed in the appeal from the first motion to resentence in case No. E062841.

On March 10, 2017, after defendant was appointed counsel, defendant filed a new petition for resentencing. The petition alleged that the value of the vehicle taken was less than $950. Defendant attached printouts from KBB to establish the value of the 1992 Honda Accord.

At the evidentiary hearing on the petition, a defense investigator, Joseph Morrison, opined that the depreciated value of the Honda was $495.39. He based his opinion on a website called Omni, which calculated the value based on the purchase price of the car with 10 years' depreciation.

On cross-examination, when asked about the KBB printout, Morrison stated that he was familiar with the KBB website but did not use it to form his opinion for this case. When the prosecutor offered to show Morrison the KBB printout, defense counsel objected on the grounds that there was no evidence that KBB was a reliable source for

5

valuation. Counsel stated, "my objection is that was raised before the Court of Appeal and the Court of Appeal and Attorney General—I mean the Court of Appeal addressed that point as to whether Kelly Blue Book—I don't think there's been any evidence being introduced at this time that Kelley Blue Book is a reliable resource for determining the valuation of vehicles." In response, the trial court noted that there has been no evidence presented that the Omni website was also reliable. The court then went on to state, "The objection is overruled. I think the objection goes more to the weight than admissibility. Certainly, Kelley Blue Book is not determinative, but I think it is evidence that the Court can consider along with any other evidence in determining the valuation. So the objection is overruled."

After questioning resumed, Morrison admitted that he had looked at the KBB.com website and looked at the valuation of the Honda. He, however, did not include that information in his report. Morrison acknowledged that the KBB printout provided a valuation for the 1992 Honda Accord sedan with 200,000 miles to be between $956 to $2,243. He opined that the information from the Omni site was more accurate. The prosecutor then showed Morrison printouts of recent sales from a website called Car Gurus that showed similar vehicles for sale for $1,695 and $1,998.

The trial court then asked Morrison if he arrived at that valuation solely based on the purchase price in 1992 with a depreciation calculator, and did not differentiate between makes and models of cars. When Morrison replied, "Yes, sir," the court clarified the question: "So it wouldn't matter if it was a Honda or a Buick or Hyundai,

6

it's just going by manufacturer-suggested retail price new in 1992 was 16,900, current depreciated value is whatever it is?" Morrison responded, "That's correct."

After the presentation of evidence and argument by counsel, the trial court made the following findings regarding the valuation of the Honda:

"That then brings us to the issue of valuation of the vehicle. The Court of Appeal's opinion did point out that it is the defendant's burden to be able to demonstrate that the value of the vehicle was below $950.00. So the defense has offered evidence from a website, Omni, which is a generic depreciation. So any 1992 vehicle that had a manufacturer's suggested retail price, new in 1992, of 16,900 would have a depreciated value of, approximately, $495.00 when that was done either in 2002 or 2012. I'm not sure what year that was done. At any rate, before 2014.

"I think the Court can take judicial notice of the fact that different models of cars have different values and hold their values differently. If we were to go out and look and try to find 1992 vehicles, and we looked at Hondas, Buicks, Hyundais, you know, five or six different makes and models of cars, we would find substantially different values.

"So I don't think a generic depreciation . . . is convincing evidence of the actual value of a particular vehicle. You would have to have more specific information as to the make and model, the mileage, and the condition of the vehicle. We don't have evidence of the condition of the vehicle here. It may be in pristine condition, or it may have been really beat up. We don't know.

"The best indicator of the value of any used item is market price, what's it actually selling for. You can have a Kelley Blue Book valuation, you can have some other

7

valuation, but that is just a very general guide. The real value is what can you actually buy that vehicle for in the real world? We have some indication of that with the listing of similar vehicles in the 1600 to—almost 1700 to $2,000.00 range in 2019, that gives you a general idea."

The court then went on to state that "looking at the totality of the evidence, the Court finds that the defense has not presented convincing evidence to demonstrate the value of this particular vehicle in 2014 was under $950.00. From the evidence that we do have, it appears to the Court that it is more likely than not that the vehicle in question here, the 1992 Honda Accord LX with 250,000 miles on it, was worth more than $950.00 in 2014. So for those reasons, the motion to reduce the conviction to a misdemeanor and resentence the defendant pursuant to . . . Penal Code section 1170.18 is denied."

3.    *ANALYSIS*

In this case, defendant contends that the trial court's order denying his petition should be reversed because the prosecutor had argued inconsistent positions regarding the admissibility of KBB valuations. Defendant stated: "The People want to eat their cake and have it too with the position that appellant could not use the favorable KBB evaluation in the Court of Appeal because it was unreliable but could use the same KBB valuations in the trial court to deny appellant his proposition 47 eligibility as to valuation being $950 or less."

We need not address defendant's judicial estopped argument because, even if the prosecutor were judicially estopped, a review of the reporter's transcript from the hearing shows the trial court found that defendant had failed to meet his burden, as required under

8

Proposition 47. As noted *ante*, Morrison admitted that he used the purchase price of the Honda and calculated the depreciation to arrive at the current value of the Honda. Morrison admitted that he used the depreciation calculation on the Omni website—and the calculation did not take into consideration the make, model, mileage or condition of the vehicle. The court therefore stated, "So I don't think a generic depreciation value is convincing evidence of the actual value of a particular vehicle. You would have to have more specific information as to the make and model, the mileage, and the condition of the vehicle. We don't have evidence of the condition of the vehicle here. It may be in pristine condition, or it may have been really beat up. We don't know." The court *then* went on and mentioned the KBB valuations with which the prosecutor cross-examined Morrison as a way to impeach Morrison, and not for the truth of the matter asserted. The court did not rely on the KBB valuations to make its ruling. The court's ruling was based on defendant's inability to provide solid evidence that the Honda was worth less than $950. Based on the court's thorough questioning of the expert witness and analysis of the estimate for the vehicle, we discern no abuse of discretion by the trial court.

Therefore, even if the prosecutor were judicially estopped from cross-examining Morrison using the KBB valuations, the trial court's ruling on defendant's motion stands because the trial court found that defendant had failed to meet its burden of proving that the Honda was valued at less than $950. The court did not rely on the KBB valuations to make this finding.

B.     SENATE BILL NO. 1393 DOES NOT APPLY

Defendant contends that, in light of Senate Bill No. 1393, the matter must be remanded for resentencing so the trial court may exercise its discretion to dismiss his five-year serious felony conviction enhancement.  (§ 667, subd. (a).)  Defendant claims Senate Bill No. 1393 applies retroactively to all cases or judgments of conviction in which a five-year term was imposed at sentencing, based on a prior serious felony conviction, provided the judgment was not final when Senate Bill No. 1393 became effective on January 1, 2019.  The People argue that Senate Bill No. 1393 does not apply because defendant's judgment was final by January 1, 2019.  For the reasons set forth below, we agree with the People.

On September 30, 2018, the Governor signed Senate Bill No. 1393 which, effective January 1, 2019, amended sections 667, subdivision (a), and 1385, subdivision (b), to give courts discretion to dismiss or strike a prior serious felony conviction for sentencing purposes.  (*People v. Garcia* (2018) 28 Cal.App.5th 961, 971.)

Under *In re Estrada* (1965) 63 Cal.2d 740, "[w]hen the Legislature has amended a statute to reduce the punishment for a particular criminal offense, we will assume, absent evidence to the contrary, that the Legislature intended the amended statute to apply to all defendants whose judgments are not yet final on the statute's operative date."  (*People v. Brown* (2012) 54 Cal.4th 314, 323, fn. omitted.)  Since nothing in Senate Bill No. 1393 suggests a legislative intent that the amendments apply prospectively only, "it is appropriate to infer, as a matter of statutory construction, that the Legislature intended [Senate Bill No.] 1393 to apply to all cases to which it could constitutionally be applied,

10

that is, to all cases not yet final when [Senate Bill No.] 1393 becomes effective on January 1, 2019." (*People v. Garcia*, *supra*, 28 Cal.App.5th at p. 973.)

A judgment is final ' "where the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari had elapsed.' " (*People v. Kemp* (1974) 10 Cal.3rd 611, 614.) The time to file a petition for a writ of certiorari in the United States Supreme Court is 90 days after judgment is entered by a state court of last resort or discretionary review is denied by a state court of last resort.[4]

In this case, after defendant appealed the underlying judgment in this case, on February 25, 2015, we dismissed defendant's appeal "because the appeal [was] from a conviction based on a guilty plea and only challenge[d] the validity of the plea, and the certificate of probable cause was denied August 18, 2014." This decision became final on March 25, 2015. (Cal. Rules of Court, rule 8.366(b)(1).) Defendant did not file a petition for review with the California Supreme Court. The conviction, therefore, became final 10 days later, on April 4, 2015. (See *Bay Development, Ltd. V. Superior Court* (1990) 50 Cal.3rd 1012, 1023 [party seeking California Supreme Court review must file petition for review within 10 days after Court of Appeal decision becomes final; Cal. Rules of Court, rule 8.500(e)(1).) Because defendant's conviction and sentence became final at the time Senate Bill No. 1393 took effect, the statute does not apply retroactively.

---

[4] United States Supreme Court Rule 13.1 <https://www.supremecourt.gov/ctrules/2019RulesoftheCourt.pdf.> (as of November 19, 2020).

11

Defendant, however, contends that his conviction was not yet final on appeal because "this case is not final because appellant is in the process of asserting his statutory right to proposition 47 relief through appeal." Here, defendant filed his original petition for rehearing on November 26, 2014, which was denied. Thereafter, he filed an in pro. per. petition for resentencing under Proposition 47 on December 5, 2016, and a new petition on March 10, 2017, represented by counsel. The hearing on the last petition was held on April 19, 2019, wherein the court denied defendant's petition.

As noted above, under Proposition 47, "[a] person who, on November 5, 2014, was serving a sentence for a conviction, . . . of a felony or felonies who would have been guilty of a misdemeanor under the act . . . had this act been in effect at the time of the offense may petition for a recall of sentence . . . to request resentencing." (§ 1170.18, subd. (a).) Similarly, Proposition 36, provides that "[a]ny person serving an indeterminate term of life imprisonment . . . may file a petition for a recall of sentence . . . to request resentencing." (§ 1170.126, subd. (b).)

In *People v. Hubbard* (2018) 27 Cal.App.5th 9 (*Hubbard*), which involved resentencing under Proposition 36, the court addressed a similar issue. In that case, the defendant was convicted of attempted robbery and felony reckless evasion and sentenced to a "Three Strikes" term as to both counts in 1996. (*Id.* at p. 11.) In 1999, the *Hubbard* court affirmed his conviction. (*Ibid.*) In 2012, the trial court denied the defendant's petition for resentencing under section 1170.126, because he was also serving a Three Strikes sentence for a disqualifying serious felony, the attempted robbery count. The *Hubbard* court affirmed. (*Hubbard*, at p. 11.) The California Supreme Court granted

12

review and remanded the matter for reconsideration of resentencing on the reckless evasion count. The *Hubbard* court reversed and remanded for a determination as to whether the defendant presented " 'an unreasonable risk of danger to the public if resentenced.' " (*Ibid.*)

On remand, the defendant argued that he was also entitled to discretionary relief under section 1385 and *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497. (*Hubbard*, *supra*, 27 Cal.App.5th at p. 11.) The prosecutor conceded that the defendant was not an unreasonable risk of danger to the public and that he was not ineligible for resentencing on the reckless evasion count. (*Ibid.*) But the prosecutor opposed the *Romero* motion and argued that the trial court had previously denied the motion. The prosecutor also argued that the trial court lacked jurisdiction to reconsider all of its sentencing choices. (*Hubbard*, at p. 11.) The trial court found that the defendant was eligible for resentencing on the reckless evasion count, but concluded it lacked jurisdiction to resentence the defendant as to the attempted robbery count. (*Id.* at p. 12.)

The *Hubbard* court concluded that " ' "[w]*hen a case is remanded for resentencing by an appellate court, the trial court is entitled to consider the entire sentencing scheme.* Not limited to merely striking illegal portions, the trial court may reconsider all sentencing choices.' " ' (*Hubbard*, *supra*, 27 Cal.App.5th at p. 13, italics added.) The *Hubbard* court also noted that our Supreme Court cited the " 'full resentencing rule' " with approval in *People v. Buycks* (2018) 5 Cal.5th 857, 893-895 "in determining that, when a person is eligible for resentencing under section 1170.18, subdivision (a), the trial court must 'resentence the defendant generally and must

13

therefore reevaluate the continued applicability of any enhancement based on a prior felony conviction.' " (*Hubbard*, at p. 13.)

The case before us is similar to *Hubbard*, but with one important difference. Here, after the judgment of conviction was affirmed, defendant filed several petitions to resentence defendant. In this case—none of defendant's petitions were granted and the trial court never resentenced defendant. And on this appeal, as explained *ante*, we affirm the trial court's order denying defendant's petition and there is no remand for the trial court to resentence defendant. Therefore, the judgment was final when Senate Bill No. 1393 went into effect in January 2019 and does not apply to defendant retroactively.[5]

---

[5] On the morning of oral argument, defense counsel submitted a newly published opinion, *People v. Lopez* (Oct. 29, 2020) 2020 Cal.App.LEXIS 1026, to our court. In *Lopez*, the defendant was convicted in criminal court in 2009 for murder and related charges based on his actions as a minor. (*Id.* at p. *1.) Ten years later, in 2019, the trial court recalled the defendant's sentence and resentenced him under section 1170, subdivision (d), to correct the original sentence in light of an intervening Supreme Court decision. *Prior* to the resentencing, the defendant moved to have a juvenile court hold a transfer hearing based on Proposition 57, which was enacted in 2016 and changed the law regarding the prosecution of minors in adult court. (*Ibid.*) "The trial court denied the motion concluding that Proposition 57 did not apply to the defendant, despite the resentencing, because his original sentence became final long before Proposition 57 took effect." (*Id.* at pp. *1-*2.) On appeal, the defendant contended that "[a]lthough the judgment in his criminal case became final in 2010 after the decision by a prior panel of [the] court, defendant contend[ed] he [was] eligible for the benefit of Proposition 57" under a holding that Proposition 57 applied to any case that was not yet final. (*Id.* at p. *5.) The First Appellate District, Division Four, agreed with the defendant and held that the trial court erred in denying the defendant's motion. The court stated, "Applying [the conclusion of *People v. Superior Court (Lara)* (2018) 4 Cal. 5th 299, 299,] that Proposition 57 applies retroactively to any judgment that is not final to defendant's new sentence, we conclude the new sentence is not final and so [the defendant] is entitled to a retroactive transfer hearing in juvenile court." (*Id.* at p. *13.) As discussed in oral argument, the facts in *Lopez* are distinguishable from the facts in this case; hence, *Lopez* is not applicable to this case. First, unlike *Lopez*, defendant's sentence was never

14

**DISPOSITION**

The trial court's order denying defendant's petition under Proposition 47 is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER _____

J.

We concur:

McKINSTER _____

                Acting P. J.

FIELDS _____

                J.

---

recalled, and defendant was not resentenced. Moreover, defendant filed his motion for resentencing *after* his original sentence—which was never changed—became final. Therefore, just because defendant filed a petition for resentencing does not mean that his case became reopened for finality purposes. As we stated, if we allowed this logic, all that a defendant would have to do to reopen his or her case would be to file a petition for resentencing. That would lead to absurd results.

In *Lopez*, the First Appellate District, Division Four, recognized that there is a split in authority "on issues similar to those defendant raises here, and the California Supreme Court has granted review in both matters." (*People v. Lopez*, *supra*, 2020 Cal.App.LEXIS 1026 at p. *6, citing *People v. Padilla* (2020) 50 Cal.App.5th 244, review granted August 26, 2020, S263375 and *People v. Federico* (2020) 59 Cal.App.5th 318, review granted August 26, 2020, S263082.) In *Padilla*, the court "held that a defendant resentenced after a successful petition for a writ of habeas corpus after Proposition 57 became effective was entitled to a retroactive transfer hearing in juvenile court." (*Lopez*, at p. *6, citing *Padilla*, at p. 247.) In *Federico*, the court "held that a trial court properly denied a defendant's request for a retroactive juvenile transfer hearing when the defendant was resentenced under section 1170, subdivision (d)(1) after pleading guilty to charges based on conduct committed when he was 15." (*Lopez*, at p. *6, citing *Federico*, at p. 328.) In *Lopez*, the court disagreed with *Federico* and found *Padilla* persuasive.

15